J-E02006-18

2019 PA Super 176

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
RICHARD HOLSTON : No. 223 EDA 2016

Appeal from the Order December 21, 2015
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005331-2015

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

CONCURRING AND DISSENTING OPINION BY McLAUGHLIN, J.: **FILED MAY
31, 2019**

I agree with the Majority that the Commonwealth has waived its claim

that the trial court erred in granting Richard Holston's motion for *habeas*

*corpus* as to the conspiracy and insurance fraud[1] charges because it failed to

ensure this Court had a complete certified record. However, I would find the

Commonwealth presented a *prima facie* case that Richard Holston committed

perjury and obstruction of justice[2] and therefore that the trial court erred in

granting the motion for *habeas corpus* as to those charges.

_____

[1] 18 Pa.C.S.A. §§ 903 and 4117(a)(2), respectively.

[2] 18 Pa.C.S.A. §§ 4902(a) and 5101, respectively.

## I.     Factual History

The charges at issue in this case stem from a criminal investigation that started following an October 2013 fire at a mansion owned by the Risoldi family. This was the third fire at the mansion since June 2009. The investigation concerned an alleged insurance fraud scheme involving homeowners' insurance claims following the multiple fires. The claims submitted by the Risoldi family following each fire included claims for damaged window treatments, which the Risoldi family allegedly purchased from Summerdale Mills. The Risoldi family's insurer, AIG, declined to reimburse for the window treatments following the 2013 fire without proof of the replacement cost following the second fire. The Risoldi family initially claimed proof of the replacement cost had been lost in the fire.

Holston is the owner of Philadelphia Draperies, LLC, doing business as Summerdale Mills. According to Holston, his brother-in-law, Abraham Reichbach, gave him the Summerdale Mills business in January 2014. Prior to January 2014, Holston had a fabrication shop that rented space from Summerdale Mills and did fabric work for Summerdale Mills, including fabricating window treatments.

In August 2014, the Commonwealth issued a subpoena to "Summerdale Mills and Design Center[,] Rick Holston[,]" requiring the production of all records of business conducted between members of the Risoldi family and Summerdale Mills, including canceled checks, invoices, and estimates for the replacement of fabrics due to fires at the Risoldi mansion.

Holston testified before a grand jury in September 2014 and produced 68 documents in response to the subpoena. N.T., 9/16/14, at 11. The documents consisted of diagrams related to window treatment fabrications. *Id.* at 12. However, he did not produce any canceled checks, invoices, estimates, or similar documents. *Id.* When asked where he found the documents he produced, he stated, "I looked through any of the boxes that had files that I could find to try to comply with the subpoena." *Id.* He stated he did not have any canceled checks, invoices, or estimates because Summerdale Mills' computer had allegedly died. He said:

> [The] computer hard drive, which . . . had everything financial, which had all the orders, invoices, everything, that hard drive died at the end of April, beginning of May of this past year. And then we called in several companies to try to restore it. And they were unable to do that. And then we sent it out to a company to see if they could restore it. They recently responded that it was not able to be recovered. And that was all the data that had been passed on to me from 2006 on.

*Id.* at 12-13.

When asked whether the company had kept hard copies of the sales orders, Holston stated, "No. Not that I've seen," claiming the company had been "paperless." *Id.* at 31. Holston testified that the company was "handwriting everything now" because the company "[did not] have a computer system." *Id.* at 30. Holston stated that he continued to receive

orders from the website, because he checked his email on his laptop.[3] *Id.* at 41.

Holston further stated that the records of his fabrication business, which did work for Summerdale Mills prior to January 2014, would not reference "Risoldi." *Id.* at 25. He claimed the customer of the business was Summerdale Mills, and Summerdale Mills did not reference specific customers when requesting work from fabrication companies. *Id.* at 25-26.

Holston testified he did not have access to the bank accounts for Summerdale Mills prior to January 2014, because his brother-in-law allegedly still controlled the bank accounts for the business prior to January 2014, and Holston opened new accounts. *Id.* at 15, 18. He said that he had asked his brother-in-law for documents, but his brother-in-law did not provide any. *Id.* 19-20.

On October 9, 2014, agents from the Office of Attorney General executed a search warrant at Summerdale Mills. N.T., 8/19/15, at 16. The agents found more than 450 documents throughout the Summerdale Mills offices related to Summerdale Mills' work for the Risoldi family, including documents from Holston's office. The documents found by the agents

---

[3] Holston's testimony is unclear as to whether it was one computer and one hard drive that was broken or whether it was a "computer system" that was broken. Although he said he now uses a laptop to access emails, and the company is still "doing everything by hand," he testified the employee who prepares the company's tax returns still had a functioning computer. N.T., 9/16/14, at 56.

included, among other things, invoices and work orders dated before April 2014. *Id.* at 19-53.[4] The agents also found invoices from Philadelphia Draperies to Summerdale Mills from 2010 and 2011, which had the Risoldi name on it. *Id.* at 28, 52.[5]

## II.    Legal Analysis

As noted by the majority, to establish a *prima facie* case, the Commonwealth must "produce[] evidence of each of the material elements of the crime charged and establish[] sufficient probable cause to warrant the belief that the accused committed the offense." **Commonwealth v. Huggins**, 836 A.2d 862, 866 (Pa. 2003) (quoting **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991)). "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury." *Id.* (citing **Commonwealth v. Marti**, 779 A.2d 1177, 1180 (Pa.Super. 2001)). Further, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth." *Id.* (quoting **Marti**, 779 A.2d at 1180).

---

[4] The documents were not made a part of the certified record. However, agents did testify at the preliminary hearing about the search and the documents they found.

[5] The agents also observed operational computers, including an operational computer in Holston's office, and an operational central server system. *Id.* at 84-85. There does not appear to be any testimony as to any documents retrieved from the computers or as to whether the computers and servers were operational prior to Holston's Grand Jury testimony.

## A. Perjury

To establish perjury, the Commonwealth must establish that the defendant "in any official proceeding [made] a false statement under oath or equivalent affirmation . . . when the statement is material and he does not believe it to be true." 18 Pa.C.S.A. § 4902(a). The statute defines "materiality" as follows:

> Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

*Id.* at § 4902(b). The statute further provides that "[i]n any prosecution under this section, except under subsection (e) of this section, falsity of a statement may not be established by the uncorroborated testimony of a single witness." *Id.* at § 4902(f).

Here, the Commonwealth claims Holston presented false testimony before the grand jury and the evidence gathered following the execution of a search warrant establishes that the testimony was false.

The trial court found, and the Majority agrees, that the Commonwealth failed to establish a *prima facie* case of perjury. Prior to his grand jury testimony, Holston appeared for an interview with the Commonwealth on September 2, 2014. In finding the Commonwealth failed to present a *prima facie* case, the trial court reasoned that "the [Commonwealth] failed to establish any variance between Holston's comments on September 2 and his

Grand Jury testimony as there was no evidence presented as to what he said on September 2." Trial Court Op., filed Dec. 21, 2015, at 10-11. The trial court next stated Holston "was not in legal possession of Summerdale [Mills'] pre-2014 records and had no duty to produce them." *Id.* at 11. The court found that "[t]he fact that the item is in an area that defendant has access to does not establish his control over it, let alone his intent to possess it." *Id.* at 12. The court stated "[t]here was no evidence, direct or circumstantial, of Holston's intent to possess or control the pre-2014 documents of Summerdale Mills. As the pre-2014 Summerdale Mills' records were not Holston's, he had no duty to produce them and was improperly held on the perjury count." *Id.*

The Majority quotes the trial court's analysis and states it "correctly determined the Commonwealth failed to present a *prima facie* case that [Holston] committed perjury while testifying before the grand jury." Majority at 16. It concludes that the "Commonwealth failed to set forth sufficient evidence beyond mere suspicion that [Holston] had any knowledge of the existence of the documents that were discovered during the execution of the search warrant." *Id.* It further concluded that "[t]here is no indication in the record that [Holston] knew that his statements regarding his inability to present additional documentation pursuant to subpoena were false." *Id.* at 17.

Respectfully, I believe that in reaching this conclusion the Majority is making credibility determinations and weighing the evidence, which should not be done when addressing a motion for *habeas corpus*. **See**

*Commonwealth v. Ouch*, 199 A.3d 918, 923 (Pa.Super. 2018) (quoting *Marti*, 779 A.2d at 1180). I would conclude that the trial court erred in granting the motion for *habeas corpus* and finding the Commonwealth failed to establish a *prima facie* case to support the perjury charge.

First, the Commonwealth does not argue that the September 2 interview forms the basis for the perjury charge. Therefore, the trial court's conclusion that the Commonwealth failed to establish a variance between statements from the September 2 interview and the Grand Jury testimony is irrelevant.

Second, I do not agree that Holston had no legal obligation to produce documents in the possession of Summerdale Mills, a company that he owned at the time of the issuance of the subpoena. The subpoena was sent to "Summerdale Mills and Design Center[,] Rick Holston[,]" and required the production of all records of business conducted relating to certain individuals. A company cannot avoid its obligations under a subpoena by transferring ownership to a new individual, who could then claim he had no legal right to the records of the company he now allegedly owns. A subpoena's command is personal, and if Holston had the documents, he had a duty to produce them. It is irrelevant that the requested documents allegedly came into being before Holston owned the company.

Further, contrary to the trial court's finding, Holston's legal obligation as to the documents does not impact whether he, in fact, committed perjury. Rather, when testifying before the Grand Jury, he was asked about his compliance with the subpoena, and he responded, "I looked through any of

the boxes that had files that I could find to try to comply with the subpoena."

*Id.* at 12. In those boxes he claimed he found only 68 documents, and found no canceled checks, invoices, or work orders. Holston did not say that he lacked access to any part of the building when searching for and through boxes. A month later, when the Commonwealth executed a search warrant, it also looked through boxes, and found more than 450 documents related to the Risoldi family, including invoices, work orders, and estimates.

Holston further stated that he did not produce any canceled checks, invoices, or estimates because Summerdale Mills'

> computer hard drive, which . . . had everything financial, which had all the orders, invoices, everything, that hard drive died at the end of April, beginning of May of this past year. And then we called in several companies to try to restore it. And they were unable to do that. And then we sent it out to a company to see if they could restore it. They recently responded that it was not able to be recovered. And that was all the data that had been passed on to me from 2006 on.

*Id.* at 12-13. When asked whether the company had kept hard copies of the sales order, Holston stated, "No. Not that I've seen," claiming the company had been "paperless." *Id.* at 31. Again, when the agents executed the search warrant, they found hard copies of invoices and work orders that predated the claimed loss of the computer hard drive.

Holston further stated that the records from the fabrication business he owned before January 2014, which did work for Summerdale Mills, would not reference the Risoldi name, as the customer of the fabrication business was Summerdale Mills, and Summerdale Mills did not reference specific customers

when it requested work from fabrication companies. In contrast, however, when executing the search warrant, the agents located invoices from Philadelphia Draperies to Summerdale Mills which referenced "Risoldi."

Holston never claimed he did not produce documents because he had no legal right to the documents or that he had limited access to areas of the office. Rather, he claimed he searched the boxes, the computer was not working, Summerdale Mills did not keep hardcopies of invoices, and Summerdale Mills did not inform its subcontractors of the clients for whom the subcontractor was doing work.[6] The agents' discovery of documents in areas to which Holston had access raises a strong inference that Holston's testimony before the grand jury was not truthful.

The statements would be material, as the Grand Jury was investigating insurance fraud on the part of the Risoldi family, who alleged they had no documentation to support the claimed replacement cost of the drapes.

Further, contrary to the Majority, I believe the Commonwealth's evidence was more than mere suspicion or conjecture. Rather, the evidence would support a finding that Holston committed perjury, that is, that he made a false statement under oath, the statement was material, and he knew the statement was false. **See** 18 Pa.C.S.A. § 4902(a). Accordingly, viewing the evidence in the light most favorable to the Commonwealth, I would find that

_____

[6] Holston also claimed he asked his brother-in-law for documents, and his brother-in-law did not provide any, and claimed he could not access the bank account information for the company prior to January 2014.

- 10 -

the Commonwealth presented sufficient evidence to establish *a prima facie* case of perjury.

## B. Obstruction

The Majority finds the Commonwealth waived its claim that it presented a *prima face* case of obstruction of justice because it failed to ensure the certified record included the documents that Holston produced in response to the subpoena and failed to include such documents in the reproduced record. I disagree. Holston described the documents in his Grand Jury testimony and agreed at that time that they do not contain invoices or estimates. I would therefore find that we can adequately review this claim.

Obstruction of justice is defined as follows:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101. To establish a person obstructed justice, the Commonwealth must establish that "(1) the defendant had the intent to obstruct the administration of law; and (2) the defendant used force or violence, breached an official duty or committed an unlawful act." ***Commonwealth v. Goodman***, 676 A.2d 234, 235 (Pa. 1996).

Comparing Holston's Grand Jury testimony with the documents and items found during the execution of the search warrant, I believe the Commonwealth established a *prima face* case of obstruction of justice. Viewing the evidence in the light most favorable to the Commonwealth, the evidence supports a finding that Holston intended to prevent the government from gaining access to documents relevant to the criminal investigation, and, in doing so committed an unlawful act, that is, perjury. ***See Commonwealth v. Feese***, 79 A.3d 1101, 1123-24 (Pa.Super. 2013) (finding sufficient evidence of obstruction of justice where defendant and co-conspirator withheld documents that should have been turned over to the Office of Attorney General pursuant to subpoenas and altered documents prior to producing them).

### C. Conspiracy and Insurance Fraud

The Majority claims that the Commonwealth waived the claims that it presented sufficient evidence to support *prima facie* cases of conspiracy and insurance fraud because the certified record does not contain the documents from the binder, which form the basis of the conspiracy and insurance fraud claims. I also note that although the reproduced record contains some testimony from a preliminary hearing describing the documents, the transcript from the relevant preliminary hearing is not part of the certified record, and the reproduced record includes only a portion of the transcript. I therefore agree with the Majority that the Commonwealth has waived its claim that it presented *prima facie* cases of conspiracy and insurance fraud.

In conclusion, I agree with the Majority that the Commonwealth waived its claim that it presented sufficient evidence of *prima facie* cases of conspiracy and insurance fraud. However, I disagree with the Majority as to the perjury and obstruction of justice charges. I would find the Commonwealth presented sufficient evidence to support a *prima facie* case that Holston committed perjury and obstruction of justice and that the trial court erred in granting Holston's motion for *habeas corpus* as to those charges.